**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALFRED STEVENS,** | : | |
| Petitioner | : | CIVIL ACTION NO. 1:04-0065 |
| v. | : | (RAMBO, D.J.) |
| | : | (MANNION, M.J.) |
| **S.A. YATES, Warden,** | : | |
| Respondent | : | |

## REPORT AND RECOMMENDATION

On January 12, 2004, the petitioner, an inmate presently incarcerated at the United States Correctional Institute at Allenwood ("FCI-Allenwood"), White Deer, Pennsylvania, filed a *pro se* pleading pursuant to 28 U.S.C. § 2241, entitled "Motion To Reinstate 1 Year Sentence Reduction For Completion of Residential Drug Abuse Program," which this court construed as a petition for a writ of habeas corpus. (Doc. No. 1). The petitioner alleged that his due process rights were violated when the Bureau of Prisons ("BOP") revoked the petitioner's provisional eligibility for early release consideration pursuant to 18 U.S.C § 3621(e).  The respondents filed a response, with supporting record and a memorandum of law, on February 18, 2004. (Doc. No. 6).  The petitioner filed a reply to the response on March 5, 2004. (Doc. No. 7).   The petitioner filed a motion for leave to file an amended supplemental petition on October 4, 2004, which was denied on October 6, 2004. (Doc. Nos. 9, 11).

On November 18, 2004, the undersigned Magistrate Judge issued a Report and Recommendation which recommended that the petition for writ of habeas corpus be denied. (Doc. No. 12). The petitioner filed objections to the Report and Recommendation on December 27, 2004. (Doc No. 15). In his objections the petitioner essentially restated his original claims, however, he appeared to present a new claim of "retroactivity." The respondents replied that a new ground for habeas relief cannot be raised in the objections to the report and recommendation. (Doc. Nos. 16, 21).

Upon review of the objections and the response to the objections, the court determined that disposition of the Report and Recommendation should be deferred, and that the matter should be remanded to the undersigned in order to consider the "retroactivity" issue. The court was concerned that the petitioner's next attempt to raise the retroactivity issue would implicate the abuse of the writ doctrine. We have considered the petitioner's retroactivity issue and conclude that it is without merit for the reasons set forth below.

## I.    **DISCUSSION**

The Report and Recommendation of November 18, 2004, is incorporated herein by reference. Initially, we construe the court's Order of February 9, 2005, as expressing concern that the petitioner may have endeavored in his objections to the Report and Recommendation to state an *ex post facto* challenge to the BOP's decision to revoke eligibility for a one-

year sentence reduction. (Hereinafter referred to as "provisional eligibility"). We do not believe the petitioner has set forth an *ex post facto* challenge.

Article I, Section 9, Clause 3 of the United States Constitution prevents Congress from passing *ex post facto* laws. In order to constitute a violation of the *ex post facto* clause the new law must be one which punishes as a crime an act previously committed which was innocent when done; or which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed. Dobbert v. Florida, 432 U.S. 282, 292 (1977). Therefore, to offend the *ex post facto* clause in this case, the BOP's application of the Program Statement in question must somehow increase the petitioner's punishment, either actually or potentially. *See* Warren v. United States Parole Commission, 659 F. 2d 183, 193 (D.C. Cir. 1981).

In his objections to the Report and Recommendation the petitioner argues that the policy relied upon by the BOP to revoke his eligibility for a 1-year early release does not apply to him. The petitioner's provisional eligibility was revoked by the BOP pursuant to P.S. 5330.10, Sections 6.5 and 6.5.2 of Chapter 6. Section 6.5 states:

> 6.5 <u>Loss of Provisional Early Release</u>.  <u>An inmate may lose his or her provisional early release at any time</u> for failure to successfully complete all components of the drug treatment program (including transitional services ), or <u>for committing certain prohibited acts</u>. Inmates are to be advised that they may use the

3

administrative remedy procedure to appeal decisions regarding early release.

P.S. 5330.10 Section 6.5.(emphasis added).  The prohibited acts are defined in Section 6.5.2, which states:

> 6.5.2   <u>Monitoring Early Release After Completion of the Unit-Based Segment of the Residential Drug Program</u>.  When the inmate is transferred to another unit or institution after completion of the residential drug unit component, the receiving unit team is responsible for monitoring the inmates early release eligibility and notifying ISM and the institution DAP Coordinator of any changes when they occur.
>
> <u>Unit team monitoring of an inmate's early release status after completion of the unit-based treatment program is critical since the inmate must continue to demonstrate positive behavior for continued § 3621(e) consideration</u>.  An inmate shall lose his or her provisional early release date immediately if the DHO/UDC finds the inmate, pursuant to an incident report, to have:
>
> - Used or possessed alcohol or drugs;
> - Been violent or threatened violence;(including code-203, but not limited to this code);
> - Committed a prohibited act (100 series); and/or
> - Committed a prohibited act involving alcohol or drugs since completing the unit based segment of the program...

P.S. 5330.10, Section 6.5.2. (emphasis added).

The petitioner offers several irreconcilable and contradictory arguments in support of this claim that the BOP policy regarding provisional eligibility revocation does not apply to him.  Notably, none of his arguments deal with P.S. 5330.10, Sections 6.5 or 6.5.2, the sections relied upon by the BOP in revoking the petitioner's provisional eligibility.

4

The petitioner first argues that the BOP policy does not apply to him because, "[s]ince completion of the program, the inmate has not been found to have committed a 100 level prohibited act and has not been found to have committed a prohibited act involving alcohol or drugs." (Doc. No. 15, p. 2). Along these same lines, the petitioner also argues, "[s]ince completion of the program, the inmate has not been found to have committed a 100 level prohibited act and has not been found to have committed a prohibited act and has not been found to have committed a prohibited act involving alcohol or drugs." (sic) (Doc. No. 15, p. 6).

The revocation of the petitioner's provisional eligibility for early release occurred because the petitioner committed a Code 203 violation, not a Code 100 violation.  The Code 203 violation was for "Threatening Another with Bodily Harm."  Section 6.5.2. clearly provides that a Code 203 violation may result in revocation of provisional eligibility.  Thus, the petitioner's claim that he did not commit a Code 100 violation is misplaced, and has no bearing on the question of whether the BOP lawfully acted within it's discretion to revoke the petitioner's provisional eligibility pursuant to Sections 6.5 and 6.5.2.

The petitioner also argues, "[t]he BOP has overlooked their retroactivity policy and applied the new policy change that came in effect October 9, 1997, that does not apply to the Petitioner." (Doc. No. 15, p. 3).  He states that the October 9, 1997, changes do not apply to him because:

> In the instant case the B.O.P. has determined that Petitioner

5

> is ineligible for 3621(e) consideration because he received a 203 level code incident report after completion of the entire program which is plainly erroneous and inconsistent with the regulation. The B.O.P. has failed to follow their own retroactive policy of chapter 6 page 5-6. 1.3 PS 5330.10. Since Petitioner had completed the RDAP since 1999 and the 203 incident was written in 2003. The application to Petitioner under the facts of this case, [c]onstituted [an] abuse of the B.O.P.'s discretion.

(Doc. No. 15, p. 7). The petitioner offers in further explanation, "It should be noted that P.S. 5330.10 on 10-9-97 on 5 p 6 2 (b) is addressing inmates participating in the residential drug program not those who have completed the program." (Doc. No. 15, p. 6).

The petitioner is incorrect when he argues that P.S. 5330.10 addresses only inmates participating in the drug program, and not those who have completed the program. Section 6.5.2 plainly applies to any inmate who participates in the program, whether the inmate is still in the process of completing the residential drug treatment component of the program, or whether he has completed the program. Furthermore, the petitioner offers no support for his statement that P.S. 5330.10 addresses only those inmates presently participating in the drug treatment component of the program.

In addition, the petitioner states that he completed the drug treatment program at Otisville, New York, on January 20, 1999, prior to his transfer to FCI-Allenwood. (Doc. No. 15, p. 5). Therefore, not only does Section 6.5.2 apply to him as a transferee to another institution, but the procedural changes to Section 6.5.2, which took place on October 9, 1997, apply to him as well.

Thus, there is no merit to the petitioner's statement that the BOP overlooked a "retroactivity policy."

This court is required to liberally construe a pro se petitioner's pleadings. Haines v. Kerner, 404 U.S. 519, 520 (1972). In attempting to liberally construe the petitioner's objections, we have tried to decipher the precise gravamen of the petitioner's claims. The objections are a confusing collection of direct quotations from the Program Statement and from the Report and Recommendation, combined with a restatement of the original arguments as set forth in the initial pleading. The best we can theorize is that the petitioner has simply chosen to ignore Section 6.5.2. He does not address this section in his objections, and he offers no reason why this section should not apply to him.

The petitioner appears to think that only Section 6.1.3 applies to him. That section states:

> 6.1.3 Retroactivity–On or After October 1, 1989. [(3) An inmate who had successfully completed a Bureau of Prisons residential drug abuse treatment program on or after October 1, 1989 is otherwise eligible if:
>
> (I)   The inmate completes all applicable transitional services programs in a community-based program (i.e., in a Community Corrections Center or on home confinement);
>
> (II)  Since completion of the program, the inmate has not been found to have committed a prohibited act and has not been found to have committed a prohibited act involving alcohol or drugs.]

7

P.S. 5330.10, Section 6.1.3. This section pertains only to the application procedure, and sets forth which inmates will be eligible to apply for a Superior Program Achievement certificate ("SPA"). The SPA is only one component of the program. The SPA certifies that the inmate has completed the residential drug unit component of the program. It is evident from the Program Statement taken as a whole, that an inmate continues to be monitored as part of the program. Section 6.1.3 does not control the on-going monitoring of the program, nor does it determine whether inmates retain provisional eligibility.

The petitioner has not stated any type of *ex post facto* claim regarding the BOP's application of Program Statement 5330.10 in these circumstances. As a result, this new argument does not change the findings, conclusions and recommendations as stated in the Report and Recommendation of November 18, 2004.

## II.   RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that:

1. The petition for habeas corpus be denied in its entirety.

s/ Malachy E. Mannion<br>
MALACHY E. MANNION<br>
United State Magistrate Judge

Dated:   March 16, 2005